In the Matter of GRAND VALLEY
SPORT & MARINE, INC.,
Debtor.

GENERAL ELECTRIC CAPITAL
CORPORATION, Plaintiff,

v.

James HOERNER, Trustee and ITT
Commercial Finance Corporation,
Defendants.

Bankruptcy No. 90–82664.
Adv. No. 91–8530.

United States Bankruptcy Court,
W.D. Michigan.

Aug. 10, 1992.

Thomas P. Sarb, Grand Rapids, Mich., for General Elec. Capital Corp.

Daniel R. Kubiak, Rockford, Mich., for ITT Commercial Finance Corp.

James B. Frakie and Thomas A. DeMeester, Grand Rapids, Mich., for trustee.

## OPINION REGARDING MOTION FOR SUMMARY JUDGMENT

JAMES D. GREGG, Bankruptcy Judge.

### I. ISSUES

This adversary proceeding requires the determination of four issues pertaining to the postpetition lending by a creditor to a debtor in possession. The lending occurred during the objection period established in an interim order which provided notice to interested parties of the proposed postpetition financing agreement. However, all loans were made prior to the subsequent disapproval of the agreement by this court. First, was the postpetition financing authorized under 11 U.S.C. § 364(c)(2)[1] and, if so, should § 364(e) provide safe harbor to the postpetition lender? Second, if the postpetition financing was not authorized pursuant to § 364(c)(2), is the postpetition lender entitled to *nunc pro tunc* approval of its agreement with the debtor? Third, should this court approve postpetition financing allowing a creditor a security interest in postpetition collateral based upon the doctrine of law of the case or equitable considerations? Fourth, if the creditor's request for approval of postpetition financing on a secured basis is denied, should the

---

**1.** Unless otherwise noted, all future statutory references are to Title 11 of the United States Code, sometimes referred to as the "Bankruptcy Code" or "Code".

creditor receive an administrative priority claim for its postpetition financing extended to the debtor in the ordinary course of business pursuant to § 364(a)?

## II. JURISDICTION

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334. This matter is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A), (B), (D), (K) and (O). The court has the authority to enter a final order in this contested matter. 28 U.S.C. § 157(c)(2). The following constitutes the court's findings of fact and conclusions of law. FED. R.BANKR.P. 7052.

## III. PROCEDURAL BACKGROUND

Grand Valley Sport & Marine, Inc. (herein "Debtor") filed a chapter 11 petition on June 14, 1990. A chapter 11 trustee was appointed on January 31, 1991. On February 15, 1991, the case was converted to chapter 7 and James Hoerner was appointed as trustee (herein "Trustee").

On May 1, 1991, General Electric Capital Corporation (herein "GECC") filed a Motion to Approve Post–Petition Financing Extended Pursuant to Interim Order. On May 22, 1991, the Trustee filed a Response to Motion of GECC to Approve Post–Petition Financing Extended Pursuant to Interim Order. On May 30, 1991, ITT Commercial Finance Corporation (herein "ITT") filed a Brief in Opposition to Motion of GECC to Approve Post–Petition Financing.

Pursuant to its First Pretrial Order dated August 14, 1991, this court, with consent of the parties, determined the matter would be considered as an adversary proceeding. *See* FED.R.BANKR.P. 9014. Subsequently, on September 3, 1991, GECC filed a First Amended Complaint to Determine Validity, Priority, and Extent of Liens in Connection with Post–Petition Financing Extended Pursuant to Interim Order (herein "Amended Complaint"). In the Amended Complaint, GECC requests the court to: (1) find that GECC extended postpetition financing in good faith and approve the postpetition financing pursuant to § 364(c) & (e); (2) approve the postpetition financing *nunc*

*pro tunc;* or (3) grant GECC an administrative priority for its postpetition financing in the ordinary course of Debtor's business pursuant to § 364(a).

On September 23, 1991, ITT filed its Answer and Affirmative Defenses to GECC's First Amended Complaint. In its Answer, ITT requests the court to: (1) determine GECC's postpetition financing was not approved pursuant to § 364 and therefore was made on an unsecured basis; (2) deny GECC's request for approval of the postpetition financing *nunc pro tunc;* (3) deny GECC's request for an administrative priority pursuant to § 364(a); and (4) determine what type of claim, if any, GECC has against the estate.

On October 3, 1991, the Trustee filed an Answer to First Amended Complaint of GECC. In his Answer, the Trustee requests the court to: (1) find that GECC's extension of postpetition financing was not in good faith because it was not approved pursuant to § 364 and hold GECC's postpetition financing is on an unsecured basis; (2) deny GECC's request for *nunc pro tunc* approval of postpetition financing; and (3) deny GECC's request for an administrative priority.

This court entered a Second Pretrial Order on November 13, 1991, establishing discovery deadlines and a trial date of May 8, 1992. On February 28, 1992, GECC filed its Motion for Summary Judgment. In addition to the assertions made in the Amended Complaint, the Motion for Summary Judgment also requests the court to grant equitable relief in accordance with the law of the case. On March 25, 1992, the Trustee filed a Brief in Opposition to Motion for Summary Judgment. Likewise, on March 26, 1992, ITT filed a Brief in Opposition to Motion for Summary Judgment. GECC filed a Reply Brief on April 7, 1992. Subsequently, ITT filed a Supplemental Brief in Opposition to Motion for Summary Judgment on April 14, 1992; the Trustee filed a Reply Brief in Opposition to Motion for Summary Judgment on April 17, 1992.

## IV. FACTS

Pursuant to the record, the following

facts are uncontested.[2] Prior to and after filing chapter 11, the Debtor was in the business of selling new and used boats, motors, trailers and related products. Prior to commencement of the case, GECC loaned funds to the Debtor to enable it to purchase such goods under a floor planning arrangement. (*See* Stipulation of Facts ¶¶ 2 & 5.) As of the filing date, the Debtor's existing indebtedness to GECC was $1,552,720.58. Repayment of the prepetition indebtedness was secured by certain boats, motors, trailers and related products on which GECC had a properly perfected purchase money security interest. (*See* Stipulation of Facts ¶ 6.)

ITT also loaned funds to the Debtor for the purchase of boats, motors, trailers and related products under a separate floor plan financing arrangement. As of the filing date, the Debtor's prepetition indebtedness owed to ITT was $1,454,945.83. (*See* Stipulation of Facts ¶¶ 7 & 8.) ITT holds a perfected blanket security interest in the Debtor's inventory, equipment, fixtures, accounts, contract rights, chattel paper, instruments, reserves, documents of title, deposit accounts, general intangibles, and all attachments, accessories, accessions, substitutions and replacements. ITT retains a first priority security interest in the Debtor's prepetition assets except for: (1) a priority security interest claimed by Mercury Marine Acceptance Corporation; (2) ITT's subordination to Great Lakes Bancorp with respect to the Debtor's parts and accessories inventory to the extent not attached to or packaged with any boat, motor, or trailer; and (3) the liens of purchase money secured creditors, such as GECC, which complied with the requirements of MICH.COMP.LAWS ANN. 440.9312(3). (*See* Stipulation of Facts ¶ 15.)

On July 16, 1990, approximately one month after the chapter 11 filing, the Debtor and GECC filed a Stipulation for Interim Use of Cash Collateral and Adequate Protection (herein "GECC Stipulation"). The GECC Stipulation acknowledged the Debtor's secured and unsecured prepetition indebtedness to GECC and authorized the use of cash collateral from GECC prepetition collateral sale proceeds.[3] The GECC Stipulation also provided for continued postpetition financing as follows:

*Line of Credit.* Absent any default following July 6, 1990, GECC has agreed to advance on a purchase money security basis the difference between $900,000.00 and the balance of the secured debt at any time. The line of credit shall ... be secured by all of the floor plan inventory acquired through the use of GECC funds post-petition under Section 364(c)(2) of the Bankruptcy Code. GECC shall also have a continuing secured interest in all of debtor's collateral which exists prepetition and like collateral which is acquired post-petition, subject to the rights of prior perfected secured creditors.

(*See* Stipulation of Facts ¶¶ 10, 11 & Exhibit A.) Notwithstanding GECC's undersecured status, the GECC Stipulation also required the Debtor to pay interest on both prepetition and postpetition indebtedness at the rate of GECC's prime rate plus two percent.

An Order Regarding Use of Cash Collateral in accordance with the GECC Stipulation was filed and entered by the court on July 16, 1990 (herein "GECC Notice Order"). Because there was no prior notice provided to interested parties in advance of

---

**2.** A Stipulation of Facts was signed by the parties and filed with the court on March 13, 1992. In addition to the Stipulation of Facts, the record before the court includes: all pleadings submitted by the parties including the exhibits attached thereto; Affidavit of Janice J. Phillips dated February 26, 1992; Affidavit of Kevin M. Callahan dated February 26, 1992; Affidavit of Thomas P. Sarb dated February 28, 1992; Deposition of Richard S. Guy dated April 3, 1992; and certain documents submitted to the court under seal pursuant to an agreed upon Protec-

tive Order. *See* 11 U.S.C. § 107(b)(1) & FED. R.BANKR.P. 9018(1).

**3.** Although not the subject of this litigation, it is important to note the GECC Stipulation, in accordance with its cash collateral provision, granted a replacement lien on prepetition collateral as adequate protection. Because GECC consented to the use of cash collateral in the ordinary course of business, the Debtor was authorized to use, sell, or lease the cash collateral without court approval. *See* 11 U.S.C. § 363(c)(2)(A).

the entry of the GECC Notice Order, it provided that:

> Any creditor with an objection to the terms of the [GECC] Stipulation must file a written objection to the Court and serve a copy of the objection ... within 14 days of the date of service.... If an objection is timely filed, a hearing on the objection will be held on August 15, 1990.... If no objection is timely filed and served as set forth above, this Order will be considered a final order and will become binding upon all creditors and interested parties without further hearing or action of this Court.

(*See* Stipulation of Facts ¶ 12 & Exhibit B.)

On August 2, 1990, the Debtor and ITT entered into a similar Stipulation for Use of Collateral (herein "ITT Stipulation"). Similar to the GECC Stipulation, the ITT Stipulation acknowledged the Debtor's secured and unsecured prepetition indebtedness to ITT and authorized the use of cash collateral generated by ITT prepetition collateral. The ITT Stipulation also provided for adequate protection as follows:

> *Adequate Protection.* As adequate protection for the Debtor's use of the Pre-petition Collateral ... the Debtor hereby conveys to ITT a security interest in all post-petition property of the Debtor, including all of Debtor's right, title, an interest to all of its goods, property, and interest in property whether real or personal, tangible or intangible, now existing and/or owned and hereafter arising and/or acquired including, but not limited to, all of the Debtor's accounts, general intangibles, inventory, equipment, fixtures, and real property, now existing or hereafter acquired, together with all rents, profits and proceeds thereof....

(*See* Stipulation of Facts ¶¶ 13, 14 & Exhibit C.) An Order Approving Stipulation Regarding Consent of ITT to Debtor's Use of its Collateral and Notice of Final Hearing (herein "ITT Notice Order") was submitted to the court with the ITT Stipulation. The ITT Notice Order, similar to the GECC Notice Order, provided that a hearing would be held regarding the ITT Stipulation if an objection was filed within fifteen days of service of the order. If no objection was filed, the ITT Notice Order would likely be approved and become a final order. (*See* Stipulation of Facts ¶ 16 & Exhibit D.)

On August 7, 1990, ITT filed a timely objection to the GECC Stipulation. The court held a hearing regarding ITT's objection on August 15, 1990. Counsel for the Debtor, ITT, and GECC appeared at that hearing. ITT objected because GECC was an undersecured creditor, and the payment of postpetition interest on prepetition debt is not permitted under § 506(b) and applicable case law. ITT did not object to the postpetition financing portion of the GECC Stipulation. (*See* Stipulation of Facts ¶¶ 18–20 & Exhibit G.) The court continued the hearing to September 11, 1990 to allow the parties to submit memoranda of law.[4]

At the continued hearing, counsel for ITT and the Debtor appeared; counsel for GECC did not appear. Because GECC was an undersecured creditor and not entitled to postpetition interest on its prepetition debt, the court sustained ITT's objection and refused to approve the GECC Stipulation. Regarding the postpetition financing, this judge stated:

> [I]f the creditor is undersecured ..., the creditor is not entitled to interest. Therefore, I will not approve the stipulation between [GECC] and the Debtor respecting adequate protection. *I have no authority to expunge a paragraph with respect to a consensual agreement by and between the parties and I will not do so. So I will disapprove the entire [GECC Stipulation] without prejudice for the Debtor and [GECC] to seek to have another adequate protection stip-*

---

4. At the August 15, 1990 hearing, there were representations made to the court that GECC had been lending funds postpetition pursuant to

*ulation approved at some time in the future.*[5]

(*See* Stipulation of Facts ¶ 20 & Exhibit H.) (Emphasis added.) An Order Denying Approval of Stipulation for Interim Use of Cash Collateral and Adequate Protection by and Between the Debtor and GECC was signed by this court and docketed on September 14, 1990. No reconsideration was sought or an appeal lodged regarding denial of the GECC Stipulation.

No objection was filed regarding the ITT Stipulation. After review, orders approving the ITT Stipulation were signed and docketed by this court on September 12, 1990, and September 27, 1990. (*See* Stipulation of Facts ¶ 17 & Exhibits E & F.)

After the chapter 11 filing and before the disapproval of the GECC Stipulation, GECC advanced funds to the Debtor totalling $427,275.50 to finance the postpetition purchase of boats, motors, trailers and related products. (Stipulation of Facts ¶ 22.) After GECC retained substitute counsel in December, 1990, GECC attempted to obtain the entry of an amended cash collateral/postpetition financing agreement which deleted the provision for payment of interest on prepetition collateral. GECC was unable to successfully obtain entry of such an order prior to conversion of the case to chapter 7. (*See* Stipulation of Facts ¶ 23.)

On March 22, 1991, this court entered an Order Granting Relief From Stay as to Collateral Financed Pre–Petition by GECC, Authorizing Turnover of Possession of Post–Petition Financed Collateral, Disposition of Collateral, and Escrowing of Proceeds. Pursuant to this order, GECC obtained possession of its asserted remaining postpetition collateral and tendered the collateral to respective manufacturers for repurchase. As a result of the manufacturers' repurchase of the collateral, GECC has deposited $319,943.00 in an escrow account. Also, the Trustee turned over $59,682.29 from prior sales of GECC's asserted postpetition collateral for deposit in the escrow

account. Finally, GECC received $2,233.25 from the sale of four inflatable boats financed postpetition and received prior to conversion of the case to chapter 7. Therefore, the proceeds collected from collateral financed postpetition by GECC total $381,-858.54. (*See* Stipulation of Facts ¶¶ 24–25.)

## V. DISCUSSION

### A. *Standards to Grant or Deny Motions for Summary Judgment.*

In considering GECC's Motion for Summary Judgment, this court is guided by the standards set forth by Judge Gibson in *FMB–First Michigan Bank v. Van Rhee,* 681 F.Supp. 1264, 1266 (W.D.Mich.1987), wherein it is stated:

Summary judgment is appropriate only where no genuine issue of material fact remains to be decided and the moving party is entitled to judgment as a matter of law. *Atlas Concrete Pipe, Inc. v. Roger J. Au & Son, Inc.,* 668 F.2d 905, 908 (6th Cir.1982), *see Willetts v. Ford Motor Co.,* 583 F.2d 852, 854 (6th Cir. 1978); *Felix v. Young,* 536 F.2d 1126, 1130 (6th Cir.1976). The function of a motion for summary judgment is not to allow the court to decide issues of fact but rather to determine whether there is an issue of fact to be tried. *United States v. Articles of Device, etc.,* 527 F.2d 1008, 1011 (6th Cir.1976); *Aetna Ins. Co. v. Cooper Wells & Co.,* 234 F.2d 342, 345 (6th Cir.1956). The moving party bears the burden of clearly establishing the non-existence of any genuine issue of fact material to a judgment in his favor. *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Articles,* 527 F.2d at 1011. In determining whether there are genuine issues of fact warranting a trial, the evidence will be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8

the GECC Stipulation without a final court order. (*See* Stipulation of Facts Exhibit G.)

**5.** *Cf. Brock v. Scheuner Corp.,* 841 F.2d 151, 154 (6th Cir.1988) ("The court must enforce the set-

tlement [agreement] as agreed to by the parties and is not permitted to alter the terms of the agreement.")

L.Ed.2d 176 (1962); *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (6th Cir.1962). If a disputed question of material fact remains, the motion for summary judgment must be denied. *Atlas*, 668 F.2d at 908; *Felix*, 536 F.2d at 1130; *Bohn*, 303 F.2d at 427.

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court analyzed the requirements necessary to grant a motion for summary judgment, specifically focusing on what constitutes a *"genuine* issue of *material* fact." *Id.* at 248, 106 S.Ct. at 2510 (emphasis in original). In determining whether a fact is "material," the Court stated:

> As to materiality, the *substantive law* will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Id.* (emphasis added). A material fact is "genuine" if a reasonable fact-finder, in assessing the evidence, could possibly return a verdict for the nonmoving party. *Id.; Bohm v. Forum Resorts, Inc.*, 762 F.Supp. 705, 707 (E.D.Mich.1991); *Hoffman v. Roberto*, 85 B.R. 406, 409 (W.D.Mich.1987). The Court further noted:

> [I]t is clear enough from our recent cases that at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.... [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.
>
> ... The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted).

In order to grant a summary judgment, the court must examine all facts established by the record before it and conclude that, under the applicable substantive law, no reasonable fact-finder could possibly return a verdict in favor of the nonmoving party. Under such circumstances, no genuine issue of material fact exists and a grant of summary judgment is appropriate.

B.  *Authorization to Obtain Credit Under § 364(c) and "Safe Harbor" Under § 364(e).*

GECC asserts it is entitled to approval of the postpetition financing in accordance with § 364(c) and (e). GECC argues it extended postpetition financing secured by a purchase money lien on postpetition collateral in good faith reliance upon the GECC Notice Order dated July 16, 1990. GECC contends it was authorized pursuant to § 364(c) to make postpetition loans to the Debtor. (Initial Legal Memorandum of GECC in Support of Motion for Summary Judgment at 8.) Therefore, GECC argues that because the GECC Notice Order authorized lending under § 364(c), the safe harbor provision of § 364(e) bars denial of the postpetition financing. (Initial Legal Memorandum of GECC in Support of Motion for Summary Judgment at 12.)

Section 364(c)(2) provides:

> If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—
>
> ....
>
> (2) secured by a lien on property of the estate that is not otherwise subject to a lien....

11 U.S.C. § 364(c)(2).[6]

The Federal Rules of Bankruptcy Procedure provide three procedures for ob-

---

**6.**  Although § 364(c) only states the trustee is

able to obtain credit, a debtor in possession also

taining court authorization of postpetition financing pursuant to § 364(c).[7] First, FED. R.BANKR.P. 4001(c) allows the trustee or debtor in possession to file a motion to obtain postpetition financing, accompanied by a copy of the agreement, with service upon the appropriate parties.[8] The court commences a final hearing no earlier than fifteen days after service. This gives adequate notice for parties to object to the postpetition financing.

Second, FED.R.BANKR.P. 4001(c) also provides for an expedited preliminary hearing for interim postpetition financing pending the final hearing. If an expedited preliminary hearing is requested by motion, the court may approve postpetition financing after appropriate notice and a finding by the court that the extension of credit is necessary "to avoid immediate and irreparable harm to the estate pending a final hearing." FED.R.BANKR.P. 4001(c)(2).

Third, FED.R.BANKR.P. 4001(d) allows the court to enter an order approving a consensual agreement relating to obtaining postpetition credit without a hearing if appropriate parties are given notice and an opportunity to object. FED.R.BANKR.P. 4001(d) does not apply to all postpetition financing under § 364. It is limited to a situation where an entity having a lien or interest in property of the estate *agrees* to the creation of an equal or superior lien.[9]

Section 364(e) provides in pertinent part:

The reversal or modification on appeal of an authorization under this section to obtain credit or incur debt ... does not

---

may avail itself to the powers of § 364. *See* 11 U.S.C. § 1107(a) & 1108.

**7.** The purpose and policy of the Code's postpetition financing provisions, including § 364(c)(2), have been explained by the Sixth Circuit.

There are countervailing strong policy reasons to encourage creditors to extend additional postpetition credit to debtors. Chapter 11 envisions the continued operation of a debtor's business, but the need for fresh capital and difficulties in obtaining the capital and wherewithal to run a business are obvious. Lenders and suppliers are understandably reluctant to do business with a debtor who is in bankruptcy and who may have few, if any, unencumbered assets to offer as collateral. Section 364 is designed to encourage postpetition financing by authorizing security in the debtor's assets and giving the lender priority over administration costs.

*Unsecured Creditors' Comm. v. First Nat'l Bank & Trust Co. of Escanaba (In re Ellingsen MacLean Oil Co., Inc.)*, 834 F.2d 599, 603 (6th Cir. 1987), *cert. denied*, 488 U.S. 817, 109 S.Ct. 55, 102 L.Ed.2d 33 (1988).

**8.** Service of the motion and agreement provide notice to interested parties. The method of providing notice to interested parties is flexible and, depending on the circumstances, may be left to the sound discretion of the bankruptcy judge. Section 102(1) provides:

"[A]fter notice and a hearing", or a similar phrase—
(A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but
(B) authorizes an act without an actual hearing if such notice is given properly and if—

(i) such hearing is not requested timely by a party in interest; or
(ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act.
11 U.S.C. § 102(1).

**9.** Although the method utilized by the court to satisfy § 364's "after notice and a hearing" requirement did not strictly comply with FED. R.BANKR.P. 4001, it was within the court's discretion and appropriate pursuant to § 102(1). The GECC Notice Order provided all interested parties with adequate notice and an opportunity to object. *Cf. In re Roberts*, 68 B.R. 1004, 1006 (Bankr.E.D.Mich.1987) (terms of the Bankruptcy Code prevail over the terms of the Federal Rules of Bankruptcy Procedure).

Both ITT and the Trustee have made arguments that the due process clause of the Fifth Amendment was violated. (*See* ITT's Brief in Opposition to GECC's Motion for Summary Judgment at 5; Trustee's Brief in Opposition to Motion for Summary Judgment at 6–9.) These due process arguments are not valid. The GECC Notice Order provided adequate notice pursuant to § 102(1), therefore, the due process clause of the Fifth Amendment is satisfied.

At oral argument, the Trustee asserted an interesting argument regarding GECC's postpetition lending which occurred between the date the GECC Notice Order was signed (July 16, 1990) and the date interested parties were served (July 24, 1990). The Trustee argues that GECC postpetition financing which occurred during this period violates the due process clause because no interested party could have had adequate notice prior to service of the GECC Notice Order. While the Trustee's argument is interesting, and may have some merit, because of this court's subsequent analysis, it is not necessary to address this argument.

affect the validity of any debt so incurred ... to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt ... were stayed pending appeal.

11 U.S.C. § 364(e).

■ "[Section 364(e)] *protects the authorization* for priority on a lien from reversal or modification on appeal, as long as the order has not been stayed pending appeal and the creditor extended credit in good faith." *Ellingsen MacLean Oil Co.,* 834 F.2d at 603 (emphasis added). The purpose of § 364(e) is to assure a postpetition lender, who extends credit in good faith reliance upon a financing order, that it is entitled to the benefit of the order regardless if it is later determined to be legally or factually erroneous. *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting,* 908 F.2d 1351, 1355 (7th Cir. 1990). The proper inquiry under § 364(e) is: (1) whether the creditor attempting to challenge authorization of credit obtains a stay pending appeal; and (2) whether the postpetition lender extends credit in good faith. *New York Life Ins. Co. v. Revco D.S., Inc. (In re Revco D.S., Inc.),* 901 F.2d 1359, 1364 (6th Cir.1990). A bankruptcy court must make an explicit good faith finding at the time of the postpetition financing hearing to afford a postpetition lender protection under § 364(e). *Id.* at 1366.

■ In determining whether GECC's reliance upon the GECC Notice Order is a valid authorization of postpetition financing pursuant to § 362(c)(2) and therefore protected by the safe harbor provision of § 364(e), the first inquiry necessarily must focus on statutory interpretation. Statutory interpretation begins with an analysis of the statute's language. *Hill v. United States,* 720 F.Supp. 95, 97 (W.D.Mich.1989). "If the statute's language is plain and unambiguous, further inquiry is superfluous and the court should enforce the language in accordance with its terms." *Boyd v. Dock's Corner Assocs. (Matter of Great Northern Forest Prods., Inc.),* 135 B.R. 46, 65 (Bankr.W.D.Mich.1991) (citing *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989)). Regardless of the plain language of a statute, a court may not enforce a statute if its literal terms produces a result in contravention to the legislature's intent. *Id.* (citing *Ron Pair Enters.,* 489 U.S. at 242, 109 S.Ct. at 1031).

Section 364(e) explicitly applies to "an authorization under [§ 364]." This "authorization" is generally encompassed in a financing order signed by the court. *See Kham & Nate's Shoes,* 908 F.2d at 1355; *Credit Alliance Corp. v. Dunning–Ray Ins. Agency, Inc. (In re Blumer),* 66 B.R. 109, 113 (Bankr. 9th Cir.1986), *aff'd,* 826 F.2d 1069 (9th Cir.1987). In *Kham & Nate's Shoes,* the Seventh Circuit concluded that § 364(e) may also apply to a bankruptcy court's modification of its own financing order. "A bankruptcy court's modification of its own orders poses the same risks as does reversal on appeal. Accordingly, although § 364(e) does not apply by its own terms, its principle applies through the law of the case." 908 F.2d at 1355.[10] The plain language establishes that § 364(e) only protects a postpetition lender if it has secured appropriate authorization pursuant to § 364(a)–(d).[11] Therefore, for GECC to obtain protection under § 364(e), it must first show that it relied on an appropriate authorization under § 364(c). *See Bezanson v. Indian Head Nat'l Bank (In re J.L. Graphics, Inc.),* 62 B.R. 750, 754 (Bankr.D.N.H.1986) (debtor cannot obtain authorization for postpetition financing by its own actions in agreement

---

**10.** In *Kham & Nate's Shoes* there was an order approving a binding commitment to give priority to new credit; in this matter there was no such order. Therefore, there is no issue regarding "backtracking on promises in absence of bad faith, which is a very narrow exception." *Id.*

**11.** The legislative history is also unambiguous. Absent a stay pending appeal, Congress' intent is to protect those creditors who in good faith rely upon *court authorization* pursuant to § 364(a)–(d). *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 347 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6303.

with a creditor; under Bankruptcy Code, authorization for postpetition financing can only occur after notice *and* entry of an order).

■ GECC asserts that the "authorization" it relied upon was the GECC Notice Order signed by this court on July 16, 1990. The GECC Notice Order is crystalline. It does *not* authorize any postpetition lending by GECC as of July 16, 1990. The GECC Notice Order is a *conditional order* with a primary purpose of providing interested parties notice and an opportunity to object to the GECC Stipulation. On its face, the GECC Notice Order states that it will become a final order only if no interested party objects within the appropriate time period. "If no objection is timely filed and served as set forth above, this Order will be considered a final order and will become binding upon all creditors and interested parties without further hearing or action of this Court." (Stipulation of Facts Exhibit B.) If no timely objection had been filed, the earliest possible date the GECC Notice Order could become a final order authorizing postpetition lending was August 8, 1990, the day after the last day for interested parties to file objections. If a timely objection was filed, as occurred in this matter, the earliest possible date that postpetition lending could be authorized was after a hearing on the merits of the objection and entry of a final order.[12]

Because ITT timely filed an objection to the GECC Stipulation, the GECC Notice Order could not constitute an "authorization" pursuant to § 364(c) until after a hearing was held on the objection. That hearing was held on August 15, 1990, when GECC was represented by counsel; the GECC Stipulation was not approved.[13] Instead, the court adjourned the hearing to September 11, 1990.

GECC then failed to appear at the adjourned hearing. The GECC Stipulation was disapproved by the court at the adjourned hearing. The Order Denying Approval of Stipulation for Interim Use of Cash Collateral and Adequate Protection by and Between the Debtor and GECC was signed by this court on September 13, 1990. This order is a conclusive order which determines the GECC Stipulation was not "authorized" pursuant to § 364(c). Additionally, because this court disapproved the GECC Stipulation the requisite explicit finding of good faith was never made. *See Revco*, 901 F.2d at 1364. Because the GECC Stipulation was never "authorized" pursuant to § 364(c), GECC cannot seek the comfort of the good faith safe harbor provisions of § 364(e). Therefore, GECC's Motion for Summary Judgment regarding approval of postpetition financing pursuant to § 364(c) & (e) is denied.

C. *Nunc Pro Tunc Approval of Postpetition Financing.*

GECC asserts that even if it is not entitled to protection pursuant to § 364(c) and

---

12. It must be noted that the Debtor, and perhaps GECC, could have moved the court for approval of postpetition financing on an expedited basis. *See* FED.R.BANKR.P. 4001(c). If presented with such a motion, the court could have made explicit findings of fact that the postpetition financing was necessary to avoid immediate and irreparable harm and the lending arrangement was in good faith. If this had occurred, and an order was entered, GECC would have been "authorized" to make postpetition loans on an interim basis to the Debtor. For whatever reason, this procedure was not utilized by the Debtor and GECC.

13. This court acknowledges ITT's objection to the GECC Stipulation only involved the payment of postpetition interest on prepetition collateral. ITT did not object to the provisions of the GECC Stipulation regarding postpetition financing. Nevertheless, both the provisions regarding

postpetition interest and postpetition financing were incorporated in one document—the GECC Stipulation. This court viewed, and continues to view, both provisions as intertwined and essential to the agreement.

· The court informed the parties at the August 15, 1990 hearing the postpetition financing provision could not be utilized to force the Debtor to make improper interest payments on prepetition collateral. "[I]n my view, [the creditor] should not be able to as a *quid pro quo* for making such post-petition advances leverage the debtor and the debtor's estate to making other payments that would not be contemplated." (Stipulation of Facts Exhibit G, at 14.) *See In re Ames Dep't Stores, Inc.,* 115 B.R. 34, 37 (Bankr. S.D.N.Y.1990); *In re Tenney Village Co., Inc.,* 104 B.R. 562, 567–69 (Bankr.D.N.H.1989). The parties were on notice this court would either deny or approve the GECC Stipulation as a whole.

(e), *nunc pro tunc* [14] approval of the postpetition financing is appropriate under these circumstances. GECC asserts that *nunc pro tunc* approval of postpetition financing is within the equitable powers of this court.

Section 105(a) authorizes the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [Title 11]". 11 U.S.C. § 105(a). This court has previously stated "a bankruptcy court does not have unfettered equity power to authorize it to make any decision which it deems to be 'fair'." *Schewe v. Fairview Estates (Matter of Schewe )*, 94 B.R. 938, 950 (Bankr. W.D.Mich.1989); *Boyd v. Dock's Corner Assocs. (Matter of Great Northern Forest Prods.)*, 135 B.R. 46, 66 (Bankr.W.D.Mich. 1991). Additionally, "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988). *Accord Childress v. Middleton Arms, Ltd. Partnership (In re Middleton Arms, Ltd. Partnership )*, 934 F.2d 723, 724 (6th Cir.1991); *Wasserman v. Immormino (In re Granger Garage, Inc.)*, 921 F.2d 74, 77 (6th Cir.1990); *Ray v. City Bank & Trust Co. (In re C–L Cartage Co., Inc.)*, 899 F.2d 1490, 1494 (6th Cir.1990); *Sumitomo Trust & Banking Co., Ltd., Los Angeles Agency v. Holly's, Inc. (Matter of Holly's, Inc.)*, 140 B.R. 643, 673 (Bankr.W.D.Mich.1992); *Great Northern Forest Prods.*, 135 B.R. at 66; *Schewe*, 94 B.R. at 950. Therefore, any § 105(a) ruling by this court will be made only after consideration of an applicable section, or sections, of the Bankruptcy Code. In this matter the court must first review and construe § 364 of the Bankruptcy Code.

■ Granting *nunc pro tunc* approval of postpetition financing is an equitable remedy which may be within the power of a bankruptcy court. *In re American Cooler Co., Inc.*, 125 F.2d 496, 497 (2d Cir.1942);

*In re Lite Coal Mining Co.*, 122 B.R. 692, 695–96 (Bankr.N.D.W.Va.1990); *National City Bank, Marion v. Imbody (In re Imbody )*, 104 B.R. 830, 834–35 (Bankr. N.D.Ohio 1989); *In re City Wide Press, Inc.*, 102 B.R. 431, 436 (Bankr.E.D.Pa. 1989), *aff'd*, 110 B.R. 710 (E.D.Pa.1990); *In re Roxy Roller Rink Joint Venture*, 73 B.R. 521, 524–25 (Bankr.S.D.N.Y.1987). *Nunc pro tunc* approval of postpetition financing is limited to "extraordinary" or "unusual" circumstances. *Imbody*, 104 B.R. at 834; *City Wide Press, Inc.*, 102 B.R. at 436. *Cf. Matter of Barker–Fowler Elec. Co.,* 141 B.R. 929, 937 (Bankr. W.D.Mich.1992) ("Retroactive relief [to modify the automatic stay] is only appropriate when a combination of factors justify the exercise of discretion to take such extraordinary action."); *Schewe*, 94 B.R. at 951 (same).

The case cited by all three parties as the leading authority regarding *nunc pro tunc* approval of postpetition financing is *American Cooler*. In *American Cooler*, the Second Circuit established three standards which must be satisfied for *nunc pro tunc* approval of postpetition financing. 125 F.2d at 497. First, the court must be confident it would have authorized the postpetition financing if a timely application had been made. Second, the court must be reasonably persuaded that no creditor has been harmed by the continuation of the business made possible by the loan. Third, the debtor and lender must have honestly believed they had the authority to enter into the loan transaction. *Id.*

Because it was decided under the Bankruptcy Act, some courts discussing *nunc pro tunc* approval of postpetition financing have discounted the precedential value of *American Cooler*.

The Bankruptcy Code includes specific procedural requirements which must be followed before a debtor's request to obtain credit can be granted. On the other hand, the Bankruptcy Act, under which *American Cooler* ... [was] decided, is

---

**14.** *Nunc pro tunc* means "now for then". "A phrase applied to acts allowed to be done after the time when they should be done, with a retroactive effect, i.e., with the same effect as if regularly done." BLACK'S LAW DICTIONARY 1069 (6th ed. 1990)

relatively unclear as to the procedural requirements for credit acquisitions and hence the procedural requirements were judge-made. We would therefore expect authorizations of credit in derogation of the Code's express provisions to be more difficult to obtain than *nunc pro tunc* applications in Act cases.

*City Wide Press, Inc.*, 102 B.R. at 436 (citation omitted). One court has totally rejected *nunc pro tunc* approval of postpetition financing agreements under the Bankruptcy Code.

> The authority of the *American Cooler* case is diminished, however, by the Second Circuit's ... distaste for bankruptcy court orders authorizing attachment of prepetition liens to postpetition assets without *prior* notice to creditors.
>
> ... The current Bankruptcy Code contains provisions which provide an express procedure for obtaining authorization for continued borrowing on a secured basis....
>
> In this procedural context, in which relief is available in a matter of days—even hours if the circumstances are urgent—the rationale for permitting retroactive validation orders for secured borrowing and attachment of liens to postpetition transactions no longer exists.

*J.L. Graphics, Inc.*, 62 B.R. at 755 (emphasis in original).[15]

■ Although this court agrees that the precedential value of *American Cooler* is diminished under the Bankruptcy Code, *nunc pro tunc* approval of postpetition financing should not be totally rejected. The *American Cooler* decision was premised upon the then-existing statute which is much less specific than § 364. *See* 2 L. KING, COLLIER ON BANKRUPTCY ¶ 364.01 (15th ed. 1992) ("[Section 364] is largely based upon Section 116(2) ... of the [prior Bankruptcy] Act but is considerably more detailed. The limited language of Section 116(2) left it to case law to flesh out the conditions under which indebtedness might be incurred....") The specific requirements enunciated in § 364 and the procedural options of § 102 and FED.R.BANKR.P. 4001 regarding the obtaining of postpetition credit almost totally erode the necessity of *nunc pro tunc* approval of postpetition financing. However, this judge does not believe such a possible remedy should be totally prohibited. Certain extraordinary factual situations may dictate authorization of *nunc pro tunc* approval of postpetition financing under the Bankruptcy Code.[16] Such factual situations must be more "compelling" than simply meeting the standards set forth in *American Cooler*. *City Wide Press, Inc.*, 102 B.R. at 437. To obtain *nunc pro tunc* approval of postpetition financing, the court believes the creditor must, as a threshold requirement, dem-

15. *J.L. Graphics, Inc.* is very analogous to the case before the court. In *J.L. Graphics, Inc.*, shortly after the filing of a chapter 11, the debtor and a creditor orally agreed to a stipulated cash collateral agreement. 62 B.R. at 753. Prior to filing, the creditor apparently held a perfected security interest in the debtor's accounts receivables. Similar to the GECC Stipulation, the stipulated agreement provided for use of cash collateral and postpetition financing. The stipulated agreement allowed the debtor to continue using receivable collections from prepetition accounts and provided that the debtor was authorized to borrow postpetition from the creditor. In return, the creditor was granted a continuing lien on postpetition accounts receivables. *Id.* Because the debtor converted to chapter 7 on the date the motion to approve the stipulated agreement was to be heard, a final order authorizing the postpetition financing was never entered by the court. *Id.* at 754. As in the case before this court, the creditor loaned funds to the debtor based on the stipu-

lated agreement during the interim period between the bankruptcy filing and disapproval of the stipulation.

Although the court rejected *nunc pro tunc* approval, it did apply the *American Cooler* standards assuming *arguendo* it was good law. The court concluded that even if the *American Cooler* standards were applied, the creditor could not establish the third standard because the parties knew court approval was necessary and did not honestly believe they had the authority to enter into the transaction. *Id.* at 755.

16. As only one possible example, an unsophisticated, honest, non-insider creditor may loan money to a debtor without notice, or actual knowledge, of the bankruptcy case. In such an instance, the creditor's due process rights may be implicated. In this type of circumstance, consideration of a *nunc pro tunc* authorization, after notice to other interested entities and a hearing, may be appropriate.

onstrate the *American Cooler* factors. Further, the equities must strongly favor the creditor and there must be an "absence of prejudice to any interested parties". *City Wide Press, Inc.,* 102 B.R. at 437.

■ Even assuming extraordinary circumstances existed, GECC has not established the threshold requirement that *nunc pro tunc* approval would be authorized in accordance with the *American Cooler* standards. This court would not have authorized the postpetition financing if a timely application had been made under proper procedures. The intertwined provision mandating postpetition interest for undersecured prepetition indebtedness violated the Bankruptcy Code. GECC now seeks *nunc pro tunc* approval of the GECC Stipulation *without* the provision for payment of postpetition interest on prepetition indebtedness. This court unequivocally ruled at the September 11, 1990 hearing that the GECC Stipulation could not be approved under the Bankruptcy Code. Additionally, the court stated, as a matter of law, it could, and would, not expunge or alter certain provisions from the consensual agreement by and between the Debtor and GECC. *See Brock,* 841 F.2d at 154. As previously stated in many bench decisions, this court will not authorize postpetition financing pursuant to § 364 where a creditor leverages a debtor in possession into making a concession unauthorized by, or in conflict with, the Bankruptcy Code as a condition for the requested credit. *See In re Ames Dep't Stores, Inc.,* 115 B.R. 34, 37 (Bankr.S.D.N.Y.1990); *In re Tenney Village Co., Inc.,* 104 B.R. 562, 567–69 (Bankr.D.N.H.1989).

GECC is unable to establish the *American Cooler* threshold requirements.[17] The court previously denied approval of the cash collateral/financing agreement. An order was entered which is, and remains, binding. Because GECC cannot even meet the threshold standards, *nunc pro tunc* approval of postpetition financing is not available.

GECC has also expended much effort arguing the general equities of this case.[18] This judge empathizes with GECC's predicament. Nevertheless, this court's equitable powers are limited. *See Ahlers,* 485 U.S. at 206, 108 S.Ct. at 968. This court may not arbitrarily make rulings based on whatever it deems is fair—rather this court must be *just.*

The court in *J.L. Graphics, Inc.* addressed a creditor's general "unfairness" argument.

The court is not unmoved by the [creditor's] contention that it is simply "unfair" not to grant it a nunc pro tunc order authorizing the borrowing and lien attachment agreement in circumstances in which the debtor-in-possession in fact received the benefit of the continued financing and use of cash collateral....

To accede to the [creditor's] equitable arguments, however, would be in effect to rewrite the statute and negate important practical considerations underlying the congressional decision to require *prior* approval of continued financing and lien attachment ... *after* notice to creditors in the reorganization proceedings. While the debtor and lender may well agree to a continued financing arrangement, in order to permit the debtor's business operations to continue, the cred-

---

**17.** Additionally, GECC has not established the third requirement of *American Cooler* that the debtor and lender honestly believed they had authority to enter into the loan transaction. As stated previously, the GECC Notice Order and the statements of this court at the August 15, 1990 hearing establish GECC had no authority to lend postpetition. Because GECC was a party to the GECC Notice, had knowledge of its conditional nature, and appeared by counsel at the August 15, 1990 hearing, this court rejects GECC's argument that it honestly believed it had authorization to advance credit to the Debtor under § 364(c).

**18.** In its briefs, GECC has argued the general equities of the case and the doctrine of law of the case together as intertwined issues separate and distinct from *nunc pro tunc* approval of postpetition financing. Because this court views *nunc pro tunc* approval of postpetition financing as an equitable remedy which may be available under the Bankruptcy Code, the court believes a discussion regarding the general equities of the case is also appropriate at this point in its opinion.

itors in a particular case may well be of the view that continued business operation is not in their interest and that liquidation is an appropriate alternative. That is of course the whole reason for requiring notice to creditors and approval by the court after such notice and hearing.

62 B.R. at 755–56 (emphasis in original) (citation omitted).

This court agrees with the *J.L. Graphics* court. While the fairness of the dispute may favor GECC, the justness overwhelmingly favors ITT and the Trustee. Retroactively approving the requested postpetition financing under these factual circumstances to remedy general unfairness would render the requirements of § 364 superfluous. Further, a ruling in GECC's favor would ignore our legal system that we have "government of laws, not of men." [19] The only equitable remedy available to GECC is *nunc pro tunc* approval of the postpetition financing. Unfortunately, for GECC, it has not satisfied the standards for *nunc pro tunc* approval. Therefore, GECC's Motion for Summary Judgment is denied regarding *nunc pro tunc* approval of postpetition financing and the general equities of the case.

### D. *Law of the Case.*

In its legal memoranda, GECC argues the postpetition financing should be approved based "upon the [prior] orders and hearings of this Court." GECC's argument is that it advanced funds postpetition relying upon the GECC Notice Order and certain statements of this court at the August 15, 1990 hearing. Because the only objection to the GECC Stipulation involved the agreed-upon postpetition interest on un-

dersecured prepetition indebtedness, and not to the postpetition financing, GECC argues it is entitled to a secured priority regarding any postpetition financing. In essence, GECC argues the court is bound to approve the requested financing agreement by the doctrine of law of the case.

"Law of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." 18 C. Wright, A. Miller & E. Cooper, Federal Prac. & Proc. § 4478, at 788 (1973 & Supp.1992) [hereinafter Wright & Miller].

> "As most commonly defined, the doctrine [of the law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." This rule of practice promotes the finality and efficiency of the judicial process by "protecting the agitation of settled issues."

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–16, 108 S.Ct. 2166, 2177, 100 L.Ed.2d 811 (1988) (citations omitted). For purposes of this opinion, the applicable facet of the law of the case doctrine is that "a single court [must] adhere to its own prior rulings without need for repeated reconsideration." 18 Wright, Miller & Cooper, *supra*, § 4478, at 788.[20] Although a purpose of the law of the case doctrine is to promote judicial finality, it does not prevent a party from seeking reconsideration of a court ruling pursuant to the applicable Federal Rule of Civil Procedure or Federal Rule of Bankruptcy Procedure. *United States v. Todd*, 920 F.2d 399, 403 (6th Cir.1990).[21]

---

**19.** In recent Supreme Court opinions, Justice Scalia has repeatedly expressed his view that the Bankruptcy Code statutory language is of paramount importance. In discussing the phrase "applicable bankruptcy law", he stated:

> When the phrase is considered together with the rest of the Bankruptcy Code ..., the phenomenon calls into question whether our legal culture has so far departed from attention to text, or is so lacking in agreed-upon methodology for creating and interpreting text, that it any longer makes sense to talk of a "government of laws, not of men."

*Patterson v. Shumate,* —— U.S. ——, —— – ——, 112 S.Ct. 2242, 2250–51, 119 L.Ed.2d 519 (1992) (Scalia, J., concurring).

**20.** For an detailed discussion regarding other aspects of the law of the case doctrine, see 18 Wright, Miller & Cooper, *supra*, § 4478.

**21.** For a discussion regarding motions for reconsideration and motions to alter or amend judgments pursuant to the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure, see *Barker–Fowler Elec. Co.*, 141 B.R. at 935.

Only a *final ruling* is subject to the law of the case doctrine. *See Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Charles N. Wooten, Ltd. (Matter of Evangeline Refining Co.)*, 890 F.2d 1312, 1322 (5th Cir.1989); *Vander Malle v. Ambach*, 667 F.Supp. 1015, 1030 n. 14 (S.D.N.Y.1987); 18 WRIGHT, MILLER & COOPER, *supra*, § 4478, at 798. "Finality in this sense does not refer to technical concepts of finality but rather is functional finality which 'seeks to identify a determination intended to put a matter to rest.'" *Evangeline Refining Co.*, 890 F.2d at 1322 (quoting 18 WRIGHT, MILLER & COOPER, *supra*, § 4478). Consistent with the finality concept, courts have ruled the law of the case doctrine does not apply to dicta. *Russell v. Commissioner of Internal Revenue*, 678 F.2d 782, 785 (9th Cir.1982). Additionally, the doctrine applies to the court's explicit decisions and "those issues decided by necessary implication." *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 250 (D.C.Cir.1987).

GECC's law of the case argument is based on two actions by this court. First, the court signed and entered on the docket the GECC Notice Order dated July 16, 1990. Second, this judge made a statement at the August 15, 1990 hearing that:

> Now with regard to any post-petition financing, that's part of the [GECC Stipulation] as well. And I understand that the creditor, [GECC], and the debtor have entered into that arrangement. I think the creditor should be protected for any post-petition advances. I don't think

[ITT's counsel] is arguing to the contrary on good faith advances.

(Stipulation of Facts Exhibit G, at 13–14.)

Reiterating, the GECC Notice Order does *not* authorize the postpetition financing contemplated by the GECC Stipulation. The purpose of the GECC Notice Order was merely to give interested parties notice and an opportunity to object. By its express terms, the GECC Notice Order could only become a *final order* if no objection was filed within the time period stated. (*See* Stipulation of Facts Exhibit B, at 2.) A timely objection was filed by ITT, consequently, the GECC Notice Order *never became a final order*. Because it never became a final order, the law of the case doctrine does not apply to the GECC Notice Order. The GECC Notice Order was not a determination by this court "intended to put a matter to rest." *Evangeline Refining Co.*, 890 F.2d at 1322.[22] The *only* final order regarding postpetition financing subject to the law of the case doctrine is the September 14, 1990 order which denied approval of the GECC Stipulation. GECC did not seek reconsideration or appeal of the order. Contrary to GECC's assertion, the law of the case is that the requested postpetition financing was disapproved. Therefore, this court holds that the law of the case doctrine does not apply to the GECC Notice Order.[23]

GECC's argument that the law of the case doctrine applies to statements made by this judge at the August 15, 1991 hearing is also unfounded. The result of the August 15, 1990 hearing was a continu-

---

**22.** *Evangeline Refining Co.* involved an interim award of attorney's fees under the Bankruptcy Code. The Fifth Circuit held:

> Interim fee awards are not final determinations intended to put a matter to rest. Rather, they are interlocutory and reviewable, and are intended only to provide some interim relief from the economic hardships of subsidizing litigation. Thus, we conclude that the law of the case doctrine does not apply to interim fee awards....

890 F.2d at 1322.

**23.** Although the court realizes GECC's current counsel is not responsible for the underlying actions which resulted in this adversary proceeding, this court is somewhat dumbfounded by GECC's argument that the GECC Notice Order authorized postpetition lending. The GECC Notice Order unequivocally states that "[i]f no objection is timely filed and served ... [the GECC Notice Order] will be considered a final order...." (Stipulation of Facts Exhibit B, at 2.) Conversely, if a timely objection is filed and upheld, the GECC Notice Order cannot become a final order. This language is unmistakable. Even an average layman untrained in the law could understand this. Therefore, an argument that the GECC Notice Order authorized postpetition financing or any item involved in the GECC Stipulation is simply unfounded.

ation to September 11, 1990.[24] This court never made a decision regarding the approval or disapproval of the GECC Stipulation including the postpetition financing provisions. Any comments made by this judge regarding the substantive issues, including good faith issues, were merely dicta. The isolated oral comment was not tantamount to a finding of good faith. Such a finding was deferred to presentation of proofs at the adjourned hearing. The law of the case doctrine does not apply to such oral comments. *See Russell,* 678 F.2d at 785. Therefore, this court holds that the law of the case doctrine does not apply to any dicta comment made by this court at the August 15, 1990 hearing.[25] GECC'S Motion for Summary Judgment regarding the law of the case doctrine is denied.

E. *Obtaining Credit in the Ordinary Course of Business Under § 364(a).*

In the alternative, GECC argues if the court does not grant any of the relief previously discussed, it is entitled to a chapter 11 administrative priority claim pursuant to § 364(a). (Initial Legal Memorandum of GECC and Brief in Support of Motion for Summary Judgment at 16.) GECC argues its postpetition lending to the Debtor was in the ordinary course of business and therefore entitled to an administrative priority under § 364(a).

Section 364(a) states:

If the trustee is authorized to operate the business of the debtor ..., unless the court orders otherwise, the trustee may obtain unsecured credit and incur unsecured debt in the *ordinary course of business* allowable under section 503(b)(1) of this title as an administrative expense.

11 U.S.C. § 364(a) (emphasis added).

█ Although the phrase is used in several sections of the Bankruptcy Code, there is no express definition of "ordinary course of business". *See* 11 U.S.C. §§ 363, 364(a) & 547(c)(2)(B). In examining the phrase "ordinary course of business", some courts analyze two tests: the "vertical dimension" test and the "horizontal dimension" test. *See Burlington Northern R.R. Co. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.),* 853 F.2d 700, 704–06 (9th Cir. 1988) (analyzing § 363); *Credit Alliance Corp. v. Idaho Asphalt Supply, Inc. (In re Blumer),* 95 B.R. 143, 147–48 (Bankr. 9th Cir.1988) (analyzing § 364(a)); *Habinger, Inc. v. Metropolitan Cosmetic & Reconstructive Surgical Clinic,* 124 B.R. 784, 786 (Bankr.D.Minn.1990) (analyzing § 363); *In re C.E.N., Inc.,* 86 B.R. 303, 305 (Bankr. D.Me.1988) (analyzing § 364(a)); *Committee of Asbestos–Related Litigants v. Johns–Manville Corp. (In re Johns–Manville Corp.),* 60 B.R. 612, 615–19 (Bankr. S.D.N.Y.1986) (analyzing § 363).

The vertical dimension test, also referred to as the creditor's expectation test, concentrates on the "ordinariness" of a transaction. *C.E.N., Inc.,* 86 B.R. at 305 (citing *Armstrong World Indus., Inc. v. Phillips (In re Phillips),* 29 B.R. 391, 394 (S.D.N.Y. 1983)). The vertical dimension test "focuses on a creditor's reasonable expectation of whether the debtor's transaction exposes him to an economic risk different from that

---

**24.** The court adjourned the hearing to allow the parties to review and submit permissive legal memoranda regarding relevant legal issues. It is germane to note GECC's counsel initially requested the adjournment "to fine tune our position in this case". (Stipulation of Facts Exhibit G, at 6.)

**25.** This court is also bewildered by GECC's argument regarding the applicability of the law of the case doctrine to certain statements made by this court at the August 15, 1991 hearing. GECC was represented by counsel at the August 15, 1991 hearing. GECC's prior counsel heard and knew first hand that, at the August 15, 1990 hearing, this court: (1) acknowledged the legal arguments regarding the payment of postpetition interest on prepetition collateral; (2). acknowledged that postpetition financing was also involved in the GECC Stipulation; (3) adjourned the hearing to September 11, 1990; and (4) made no final decision regarding any portion of the GECC Stipulation. Therefore, GECC's argument they made loans postpetition based on dicta by this court at the August 15, 1990 is meritless. Without question, the record at the August 15, 1990 hearing establishes that no approval to postpetition financing was given and no explicit finding of good faith was made. The matter was simply adjourned.

he has accepted in the past." *Id.* (citing *Johns–Manville*, 60 B.R. at 616).

The horizontal dimension test involves:

"a comparison of *this* debtor's business to other like businesses" so that a court must then decide "whether a type of transaction is in the course of *that debtor's business* or in the course of some other business." This part of the analysis has also been construed as a transaction that occurs in the day-to-day operations of a business.

*Id.* (quoting *Johns–Manville*, 60 B.R. at 618) (emphasis in original) (citations omitted).

This court is now unable to determine whether the GECC postpetition lending was in the ordinary course of business under § 364(a). The only facts before the court pertaining to § 364(a) are the Debtor and GECC had a prepetition floor planning arrangement and the parties attempted to arrange for postpetition financing. (*See* Stipulation of Facts ¶¶ 5 & 11.) The current record is insufficient to determine, under the applicable substantive law, whether the postpetition lending was in the ordinary course of business. Therefore, because genuine issues of material fact exist regarding the request for chapter 11 administrative priority, GECC's Motion for Summary Judgment is denied regarding its request for administrative priority pursuant to § 364(a).

## VI.  CONCLUSION

For the reasons set forth above, GECC's motion for summary judgment is denied. An order has been entered accordingly.