**In re LITE COAL MINING COMPANY, Debtor.**

**Bankruptcy No. 86–00370–C.**

United States Bankruptcy Court,
N.D. West Virginia,
Clarksburg Division.

July 13, 1990.

William Jay Leon, Morgantown, W.Va., for debtor.

Patrick Flatley, Asst. U.S. Atty., Wheeling, W.Va., for I.R.S.

Michael Bray, Steptoe & Johnson, Clarksburg, W.Va., for Blueville Bank of Grafton.

## ORDER

L. EDWARD FRIEND, II, Bankruptcy Judge.

The Movant, the Blueville Bank of Grafton, has filed with this Court a Motion for Recognition of Post–Petition Liens and a Request for Allowance and Payment of Administrative Expenses, *nunc pro tunc*. A hearing was held in this matter on April 26, 1990, after which the Court issued an Order on June 5, 1990, setting forth findings of fact in this matter and ordering all parties opposing Movant's Motion and Request to file memoranda with this Court addressing the following issues:

(a) Can the Court recognize post-petition liens after they have been granted by the debtor-in-possession and should the Court recognize the post-petition liens of the Blueville Bank of Grafton?

(b) Does the Internal Revenue Service, by virtue of its prepetition liens, have a lien on any of the equipment of the debtor upon which the Blueville Bank of Grafton seeks recognition of its post-petition liens? and

(c) Whether or not the Blueville Bank of Grafton is entitled to allowance and payment of a Chapter 11 administrative expense for the sums it loaned to the debtor after commencement of the debtor's bankruptcy.

The Internal Revenue Service filed a Memorandum in Support of its Opposition to the Blueville Bank of Grafton's Motion

and Request, supplementing the record and the Court's findings of fact in the June 5, 1990 Order with the testimony of the debtor's principals at the § 341 meeting of creditors held on May 18, 1990. The Blueville Bank of Grafton (hereinafter sometimes referred to as the "Bank") filed a responsive memorandum. Upon consideration of these issues, and after review of the memoranda submitted by the respective parties, the Court finds and concludes as follows:

1. The Blueville Bank of Grafton's Motion for Recognition of Post–Petition Liens

The Bank asks this Court to recognize various security interests granted to it in property acquired by the debtor subsequent to the filing of the Chapter 11 petition. A list of these security interests is set forth in the Bank's Motion for Recognition of Post–Petition Liens. The Bank concedes that the Court did not approve any of the security interests taken by the Bank (with one exception being the approval of the Bank's interest in certain accounts of the debtor by Order dated June 27, 1987). Nevertheless, the Bank asks this Court to recognize the validity of its security interests in the debtor's property *nunc pro tunc.*

■ In order to create a security interest during the pendency of the debtor's proceedings, the debtor-in-possession must obtain court approval and comply with the notice provisions of the Code and the Bankruptcy Rules. *In re Serbus,* 53 B.R. 187 (Bankr.D.Minn.1985). The Bank contends that court approval was unnecessary since the equipment in which it obtained the security interests were not property of the debtor on the date of the filing. However, 11 U.S.C. § 541(a)(7) includes any interest in property acquired by the estate after the commencement of the case in the definition of "property of the estate".

■ 11 U.S.C. § 362(a)(4) prohibits a creditor from engaging in any act to create, enforce or perfect a lien against property of the estate. The Bank thus acted improperly in taking security interests in the property of the estate without court approval. This Court cannot validate security interests after the fact when such transfers were originally made in violation of the automatic stay.

■ One exception to the foregoing analysis is apparent to the Court. If the Bank paid any vendor directly or directed proceeds through the debtor to the vendor and took a properly perfected, purchase money security interest in the newly purchased equipment before such equipment became property of the estate, its actions would not have violated the automatic stay, and its security interest in the respective equipment could be recognized. The circumstances surrounding the grant of the Bank's security interest in the disputed property are not clear from the record. To the extent that the Bank can prove at an evidentiary hearing that it paid funds directly or indirectly to vendors for a particular item of equipment and then properly perfected a purchase money security interest in such equipment, this Court will recognize the validity of such security interest. To the extent that any security interest was granted to the Bank in equipment in which the debtor-in-possession had already acquired property rights, however, the Blueville Bank of Grafton's Motion for Recognition of Post–Petition liens is HEREBY DENIED.

2. The Internal Revenue Service Does Not, By Virtue of Its Pre–Petition Liens, Have a Lien on Any of the Equipment Which the Debtor Acquired Post–Petition

■ The Internal Revenue Service has asserted that its pre-petition tax liens extend to the property acquired by the debtor post-petition upon which the Bank claims a lien. Although we are aware that there is contrary authority on this matter, this Court believes that the better reasoned analysis is that set forth in *Matter of Dente/Pender,* 60 B.R. 164, 165 (Bankr.M. D.Fla.1986). *Dente* holds that a debtor-in-possession is a distinct entity from the taxpayer; and as such, post-petition property acquired by the debtor-in-possession cannot be used to secure pre-petition tax obli-

gations. The Court finds that this interpretation better reflects the policies behind a Chapter 11 reorganization than one which would subject property acquired post-petition by a debtor in possession to a non-consensual, pre-petition lien. Thus, to the extent that the Internal Revenue Service holds a secured claim against the debtor, the value of its security must be determined as of the commencement of the debtor's Chapter 11 case, and to the extent that their claim exceeds the value of the collateral as of the date of the filing, it is an unsecured claim, which may nonetheless be entitled to priority under 11 U.S.C. § 507(a)(7).

3. Request for Allowance and Payment of Administrative Expenses, *nunc pro tunc*, of Blueville Bank of Grafton

■ The Blueville Bank of Grafton has sought an order from this Court allowing it a Chapter 11 administrative expense claim in the amount of $595,634.07 for funds it loaned to the debtor after the filing of its petition for relief on June 13, 1986. The Bank's counsel concedes that court authorization for the financing the Bank provided for the debtor was obtained only in one instance, for a $17,000.00 loan for which the Court granted the Bank a security interest in certain of the debtor's accounts receivable. All other funds loaned to the debtor by the Bank post-petition were made without prior authorization from the Court.

The Bank's counsel contends that all funds it lent to the debtor after the filing of the petition constituted unsecured credit granted in the ordinary course of the debtor's business, and that accordingly, prior approval was unnecessary pursuant to the terms of 11 U.S.C. § 364(a). This section allows the trustee or debtor in possession "to obtain unsecured credit and incur unsecured debt in the ordinary course of business allowable under section 503(b)(1) of this title as an administrative expense." Bank's counsel points to the testimony of the principals of the debtor to show that these loans were used to pay payroll, taxes, and other ordinary day-to-day expenses of the debtor, to cover the debtor's overdrafts

for checks written to pay its ordinary expenses, and to purchase necessary equipment.

Even viewing this argument in the light most favorable to the Bank, this Court cannot conceivably conclude that the funds lent to the debtor by the Bank were used in the ordinary course of the debtor's business. By the debtor's own admission, some of these funds were used to pay off prior pre-petition debts of the debtor to the Bank. The debtor's principals also testified that the used the post-petition loans to purchase numerous expensive items of equipment, yet the debtor mined only 4,000 to 5,000 tons of coal during the course of their post-petition business, at a mine site where it never even obtained a signed or complete lease (341 Tr. pp. 6–8). Finally, it has been held that a bank's covering of overdrafts is not generally in the ordinary course of business. *In re SMB Holdings, Inc.*, 77 B.R. 29, 32 (Bankr.W.D.Pa.1987).

■ Furthermore, this Court reads Section 364(a) in line with other cases holding that the standard to be met is whether the extension of credit, rather than the expenses satisfied by the funds loaned, were in the ordinary course of business. *In re Dant & Russell, Inc.*, 853 F.2d 700 (9th Cir.1988); *In re Massetti*, 95 B.R. 360 (Bankr.E.D.Pa.1989). Clearly, an extension of over $600,000.00 over a two-year period to a business generating virtually no income cannot be considered in the ordinary course of business. Additionally, it is not considered to be in the normal course of business to repeatedly borrow money to meet payroll or tax obligations.

■ This Court believes that, in an appropriate case, it would have the authority to retroactively grant an administrative expense priority under 11 U.S.C. Sections 364(b) or (c). The Second Circuit set forth the following standards under which a discretionary, equitable determination of *nunc pro tunc* approval of a previously unauthorized loan could be made:

(1) the court is confident that he would have approved the loan had the appli-

cation for financing been timely made;

(2) the court is reasonably persuaded that no creditor has been harmed by continuation of the business made possible by the loan; and

(3) the debtor and lender honestly believed they had the authority to enter into the loan transaction.

*In re American Cooler Co., Inc.,* 125 F.2d 496 (2d Cir.1942); *Accord, Matter of Alafia Land Development Corp.,* 40 B.R. 1, 4 (Bankr.M.D.Fla.1984).

█ In the present case, the Court finds that the Bank is unable to meet *any* of the foregoing elements. It is doubtful that the Court would have continually approved additional loans to a debtor in an aggregate of $600,000.00 when, as this Court noted on several occasions during the pendency of the Chapter 11 proceedings, the debtor had no reasonable prospect of a successful reorganization. Secondly, this Court is reasonably persuaded that the Internal Revenue Service has been harmed by the continuation of the debtor's business, to the extent that the debtor accrued post-petition tax liabilities of $47,988.50 which would not have resulted if the debtor had ceased operations at an earlier point in time. Finally, the debtor's principals testified that they personally questioned the Bank's authority to loan funds without court approval (341 Tr. pp. 62–63), and the Bank was obviously aware of the need to obtain court approval to loan funds in the course of the Chapter 11 proceedings, since it sought prior court authorization for one of the numerous extensions of credit it made to the debtor.

The policy underlying the award of an administrative expense priority is that the estate as a whole benefits if general creditors are subordinated to facilitate the provision of goods and services necessary for the continued operation of the estate. *In re Christian Life Center,* 821 F.2d 1370 (9th Cir.1987). In the present case, the continued operation of the debtor benefitted no one and resulted in harm to at least one creditor. In this case, hindsight is appropriate. The Bank made the loans to the debtor on its judgment that the funds would benefit the estate. The Bank elected not to involve the Court or creditors in its decision. The Bank was wrong. It suffers only on the basis of its own decision; it should not benefit from it.

The Court, therefore, concludes that the funds loaned to the debtor by the Bank were not loaned or used in the ordinary course of business, and no factors exist which warrant the award of a discretionary, equitable grant of a *nunc pro tunc* determination that the Bank is entitled to an administrative expense priority. Accordingly, "Blueville Bank of Grafton's Request for Allowance and Payment of Chapter 11 Administrative Expense" is HEREBY DENIED.

It is accordingly SO ORDERED.