In re **BAXCO CORPORATION, Debtor.**

**AFCO CREDIT CORPORATION, Plaintiff,**

v.

**BAXCO CORPORATION, Defendant.**

**Bankruptcy Nos. 89 B 14757, 91 A 643.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Oct. 14, 1992.

---

estate. In addition, AFCO seeks as an administrative expense the difference between the amount due under the Premium Finance Agreement and the amount represented by the unearned premiums.

The Trustee counters on behalf of Baxco that the purported security interest was granted post-petition without court approval, and must therefore be avoided as an unauthorized post-petition transfer under § 549 of the Bankruptcy Code. The Trustee further argues that the claim of fraud must fail because AFCO has not shown that it justifiably relied on Baxco's misrepresentations, and thus not established all the elements of fraud under Illinois law. Briefs have been submitted and the matter taken under advisement by the Court.

The Court has jurisdiction over this matter pursuant to Title 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2)(C) and (K). The following shall constitute the Court's findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052.

## FACTS

The debtor herein, Baxco Corporation (the "Debtor"), filed a Chapter 11 petition in bankruptcy on September 5, 1989. The Chapter 11 proceedings were converted to a Chapter 7 proceeding on December 10, 1990, and David Herzog was appointed as the Chapter 7 trustee (the "Trustee"). Prior to conversion, on or about February 8, 1990, the Debtor entered into a Premium Finance Agreement ("PFA") with the plaintiff AFCO Credit Corporation ("AFCO") under which AFCO agreed to finance certain insurance premiums. The PFA covered four insurance policies, with a total premium due of $42,355.00, to be placed with Zurich Insurance through the Debtor's agent Arthur J. Gallagher. Under the agreement the Debtor made a downpayment of $8,471.00 and AFCO financed the remaining balance of $33,884.00. The debtor was obligated under the PFA to repay the $33,884.00 plus a $1,634.00 finance charge in nine monthly installments of $3,946.50 each, for a total repayment of $35,518.50.

Robert J. Trizna, Chicago, IL, for plaintiff AFCO.

David R. Herzog, Layfer Cohen & Handelsman, Chicago, IL, for defendant.

## MEMORANDUM OPINION

ERWIN I. KATZ, Bankruptcy Judge.

This matter comes before the Court on the motion of AFCO Credit Corporation for summary judgment on its adversary complaint against the debtor Baxco Corporation. AFCO seeks certain unearned premiums which were turned over to the Chapter 7 trustee herein by Baxco's insurance agent upon cancellation of certain insurance policies AFCO financed for the debtor. While the Premium Finance Agreement between the parties was executed post-petition without court approval, AFCO maintains it is entitled to the unearned premiums either because it holds a first priority security interest in them or, alternatively, because they were obtained fraudulently and thus do not constitute property of the

The PFA provides that the loan was to be secured by any unearned premiums, dividends or loss payments payable under these insurance policies. Paragraph 3 states:

SECURITY INTEREST: The insured assigns to AFCO as security for the total amount payable in this Agreement any and all unearned premiums and dividends which may become payable under the insurance policies and loss payments which reduce the unearned premiums, subject to any mortgagee or loss payee interests. The insured gives to AFCO a security interest in all items mentioned in this paragraph.

The PFA also contains in Paragraph 8 an express representation by the Debtor that it is not insolvent or the subject of any insolvency proceeding. AFCO has the right under Paragraph 9 to cancel the insurance policies and accelerate the unpaid amount due upon default. Paragraph 10 irrevocably appoints AFCO as the attorney-in-fact for the Debtor with the full authority to cancel the insurance policies and receive all sums in which AFCO holds a security interest.

The agreement contains a warranty in Paragraph 19 by the insured's agent "that he will hold in trust for AFCO any payments made or credited to the insured ... by the insurance companies and that he will pay the monies to AFCO upon demand to satisfy the then outstanding indebtedness of the insured." In a separate section entitled "Producer's Representations," signed by the insurance agent, the agreement provides in pertinent part:

(8) The undersigned [agent] represents that a proceeding in bankruptcy, receivership, or insolvency has not been instituted by or against the named insured or if the named insured is the subject of such a proceeding, it is noted on the premium finance agreement....

The Debtor made monthly payments under the PFA until August, 1990, when it defaulted. Upon the Debtor's default, AFCO cancelled the related insurance policies effective September 5, 1990. The balance then due under the PFA was $11,-864.50. Upon cancellation, AFCO was advised by the debtor's insurance agent that there were unearned premiums under the policies in the amount of $9,071.31. AFCO made a demand upon the agent for turnover of the unearned premiums, but the agent refused on the grounds that the Trustee had also made a demand for payment and had advised it that payment to AFCO would constitute a violation of the Bankruptcy Code. The agent thereafter turned the unearned premiums over to the Trustee. AFCO now seeks the $9,071.31 held by the Trustee and the remaining $2,793.19 due under the PFA.

## STANDARDS FOR SUMMARY JUDGMENT

■ Rule 56(e) of the Federal Rules of Civil Procedure provides that summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The primary purpose of the summary judgment procedure is to avoid unnecessary trials when there is no genuine issue of material fact.

■ Applying the evidentiary standard that would apply at trial, the court must inquire whether there is a dispute about a material fact which would be outcome determinative. *Valley Liquors, Inc. v. Renfield Importers, Ltd.*, 822 F.2d 656, 659 (7th Cir.), *cert. denied*, 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987). The party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552. The party

opposing the motion may not rest upon mere allegations or denials in his pleading. Its response must demonstrate specific facts showing a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553. Inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513; *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355. When the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment should be granted.

## DISCUSSION

### A. *Unauthorized Post–Petition Transfer*

■ AFCO seeks to enforce a post-petition security interest in the unearned premiums. The Trustee does not contest the validity of the security interest outside the bankruptcy context and it appears from the record that it would be valid against the' Debtor and its creditors if the Debtor were not involved in bankruptcy proceedings. However, since (1) AFCO acquired its security interest without court approval after the Debtor filed its Chapter 11 petition, and (2) the transaction is clearly a "transfer" under Section 101 of the Bankruptcy Code, Section 549 requires that it fail.

Section 364(c) of the Bankruptcy Code provides that if the trustee (or debtor-in-possession) is unable to obtain unsecured financing post-petition, after notice and hearing the court may authorize the sort of secured credit the Debtor obtained through the PFA. Conversely, Section 549 allows the trustee to avoid such post-petition secured loan that has not been authorized. There are two exceptions to this rule—the first protects gap creditors in an involuntary proceeding and the second protects good faith purchasers of real property. AFCO is not protected by either exception.

AFCO argues that the equities underlying this matter require that the Court limit the application of § 549 and waive the requirement of court approval. According to AFCO, the other creditors will not be prejudiced if the Court upholds its security interest since (1) the unearned premiums would not have been available for distribution absent AFCO's financing the underlying insurance policies and (2) the insurance was necessary to the operation of the debtor's business. The Court, it argues, should therefore overlook the fact that the Debtor failed to obtain prior approval and uphold the security interest.

AFCO relies on *In re Gloria Manufacturing Corp.,* 65 B.R. 341 (E.D.Va.1985). In *Gloria Manufacturing,* the Court retroactively granted priority treatment under § 364(c) to sums advanced by the Chapter 11 trustee to pay the debtor's employees based on a finding that: (1) there had been an urgent need to meet the payroll; (2) there was insufficient time to seek court approval prior to making the advance; (3) the loan was a necessity if the business was to continue; (4) the funds were used solely to cover the wages due; (5) funds were not available from any other source; (6) all interested persons benefitted from the loan and no one was prejudiced thereby; (7) the later sale of the business as a going concern was a benefit to all concerned; and (8) had the trustee had time to seek prior court approval the Court would have unquestionably granted it.

Even assuming this Court had the power to disregard the plain language of Section 549 to retroactively approve an otherwise avoidable transfer, AFCO has not established the factors set forth in *Gloria Manufacturing.* It has not shown that the PFA or the underlying insurance policies were necessary to the continued operation of the Debtor's business. It has not mentioned the nature of the Debtor's business, the type of property insured, or whether this transaction was in the ordinary course of the Debtor's business. Furthermore, it has not shown that funds were not available from any other source or that time was of the essence.

Most importantly, AFCO has failed to allege that the loan benefitted all parties in interest by allowing the Debtor to continue operating or be sold as a going concern. Such a benefit was a primary reason for the retroactive approval of the payroll ad-

vances made in *Gloria Manufacturing.* Those cases relied upon by *Gloria Manufacturing* also look to the benefit to the estate and the ability to continue operations as a going concern. *See, e.g., Wolf v. Nazareth Fair Grounds and Farmers' Market,* 280 F.2d 891 (2d Cir.1960) (finding that the loan enabled the debtor to continue as a going concern and thus benefitted the creditors of the estate). No such benefit has been demonstrated here. On the basis of the facts presented, the Court could find that the loan facilitated the downpayment of over $8000, made by the Debtor with funds of the estate, and was therefore prejudicial to the estate, especially since the business failed shortly thereafter. The Court finds no authority to deviate from the plain language of the Code in this instance and apply equitable considerations to uphold an otherwise avoidable transfer.

### B. *Fraudulent Inducement and the Remedy of Constructive Trust*

AFCO argues alternatively that the unearned premiums are not property of the estate. It claims that such premiums were fraudulently obtained when the Debtor misrepresented in the PFA that it was not insolvent or in bankruptcy. Moreover, AFCO maintains that any interest the Debtor acquired in such premiums is held in a constructive trust for the benefit of AFCO.

■ The present analysis is set in the context of Illinois law since property of the estate is comprised of Baxco's legitimately held interests in property outside of bankruptcy. *Matter of Sanders,* 969 F.2d 591, 593 (7th Cir.1992). To make out a claim for fraud in Illinois, the movant must show:

(1) a false statement of material fact; (2) by a party who knows or believes it to be false; (3) with the intent to induce another to act; (4) action by another in reliance on the statement's truth; and (5) injury to the other resulting from that reliance. *In addition, the injured party must have been justified in relying on the other's statement.*

*Tan v. Boyke,* 156 Ill.App.3d 49, 108 Ill. Dec. 229, 232, 508 N.E.2d 390, 393 (1987) (citations omitted) (emphasis added).

■ The Debtor does not dispute, and it is apparent from the record, that it knowingly made misrepresentations for the purpose of inducing AFCO to act, and that AFCO did in fact act in reliance on those misrepresentations to its detriment. It is the appended element of justifiable reliance that the Debtor argues cannot be established (see Page 7 of its Response to the Motion for Summary Judgment). The attempt to define justifiable reliance has had an uneasy history in Illinois: "Illinois law is opaque concerning the obligation to investigate so as not to be snookered." *Ash v. Georgia–Pacific Corporation,* 957 F.2d 432, 435 (7th Cir.1992). The leading cases of a decade ago, *Luciani v. Bestor,* 106 Ill.App.3d 878, 883, 62 Ill.Dec. 501, 506, 436 N.E.2d 251, 256 (1982); *Soules v. General Motors Corp.,* 79 Ill.2d 282, 286, 37 Ill.Dec. 597, 599, 402 N.E.2d 599, 601 (1980), charged the plaintiff with constructive knowledge of "facts of which [it] might have availed himself by the exercise of ordinary prudence." 79 Ill.2d at 286, 37 Ill.Dec. at 599, 402 N.E.2d at 601. Although these cases, and their approach to justifiable reliance, have been cited by the Seventh Circuit as recently as four years ago (*see Teamsters' Local 282 Pension Trust Fund v. Angelos,* 839 F.2d 366 (7th Cir.1988)), the clear trend over the past two years has been a return to the general rule that a party who intentionally deceives another, to her prejudice, may not claim as a defense to fraud, that the innocent party was negligent. "There is no defense of contributory negligence to an intentional tort, including fraud." *AMPAT/Midwest, Inc. v. Illinois Tool Works Inc.,* 896 F.2d 1035, 1041 (7th Cir.1990). Most recently, "In Illinois a liar may not lull the victim into a false sense of security and then say that the reliance was not justifiable." *Ash,* 957 F.2d at 436, quoting *Astor Chauffeured Limousine Co. v. Runnfeldt Investment Corp.,* 910 F.2d 1540, 1550 (7th Cir.1990). Baxco may not claim as a defense to its unequivocal statements in the

PFA that AFCO's reliance was not justifiable.

■ AFCO's reliance on Baxco's representations was justifiable so long as it (1) had no actual knowledge of the fraud, and (2) was not reckless in failing to discover it. *AMPAT/Midwest*, 896 F.2d at 1042. "If a buyer is not merely careless, but either knows that the seller's representations are false or, strongly suspecting that they are false, declines to investigate further because he is content to take the risk, presumably having been compensated by being given a break on the purchase price, then he cannot cry fraud. The wound is self-inflicted." *Dexter Corp. v. Whittaker Corp.*, 926 F.2d 617, 620 (7th Cir.1991). Baxco has alleged neither that AFCO knew, nor strongly suspected, that its representations were false. While it is arguable that AFCO did not exercise ordinary prudence when it failed to make use of easily accessible information in ascertaining Baxco's financial condition, this Court will not say that its behavior rose to a level of recklessness such that the "wound [was] self-inflicted." The Court therefore finds that AFCO's reliance on the statements made in the PFA was justifiable, and that all of the elements of fraud have been established.

■ Property that the Debtor obtained by fraud is not part of the estate, and the trustee has no power over it. *In re Teltronics, Ltd.*, 649 F.2d 1236, 1238 (7th Cir.1981). Under Illinois law, a constructive trust is imposed when it would be inequitable for a party in possession of wrongfully acquired property to retain possession of the property. *Suttles v. Vogel*, 126 Ill.2d 186, 127 Ill.Dec. 819, 822–23, 533 N.E.2d 901, 904–05 (1988). "The sole duty of the constructive trustee is to transfer title and possession of the wrongfully acquired property to the beneficiary." *Id.; also see Collier on Bankruptcy* Para. 541.13 (15th ed. 1992), "Where the existence of a trust has been established, the bankruptcy trustee will be ordered to turn over the property or proceeds subject, of course, to the doctrines of tracing." Therefore, subject to the tracing requirement,

AFCO may recover all amounts deemed to be held in constructive trust by the Trustee on its behalf.

■ To assert a constructive trust, AFCO must not only establish fraud, but also identify the property to which their constructive trust attaches. *In re Independence Land Title Corp. of Illinois*, 18 B.R. 673, 674 (Bankr.N.D.Ill.1982). To the extent that it cannot, it has only the rights of a general unsecured creditor. *Id.* It is undisputed that the Trustee holds $9,071.31 in unearned premiums resulting from the PFA. AFCO identifies this property as the corpus of the constructive trust. Based on the foregoing rationale, the Court agrees. The Trustee argues that the Debtor's downpayment of $8,471.00 constitutes equity in the insurance policies, and thus property of the estate (Response to Motion for Summary Judgment, Page 3). However, the Court declines to follow such rationale in light of the fraudulent behavior that gave rise to the finding of a constructive trust in the first place. Therefore, with respect to the $9,071.31 in unearned premiums, summary judgment is hereby granted.

C. *Administrative Expense Status for Outstanding Balance*

■ AFCO seeks as an administrative expense the balance due on the PFA after a credit of the unearned premiums. Section 503(b) requires that a claim which is to be paid as a priority administrative expense must have been actual and necessary to preserve the estate. As discussed above, AFCO has failed to allege facts which would show that the insurance policies and the financing agreement were necessary to preserve the estate. The Court has not even been told what property was insured, leaving it unable to make a determination as to whether this in some way benefitted the estate. Summary judgment on this issue is therefore denied. Counsel for AFCO is directed to present a proposed summary judgment order, upon notice in open court, on November 2, 1992, at 10:00

a.m., at which time a trial date will be set for the remaining issues in this cause.