**In re NATIONAL RESERVE CORPORATION, Debtor.**

**The BANK OF WESTERN MASSACHUSETTS, Plaintiff,**

v.

**CPF PREMIUM FUNDING, INC., Defendant.**

**Bankruptcy No. 94–40477–HJB. Adv. No. 95–4091.**

United States Bankruptcy Court, D. Massachusetts.

Aug. 20, 1996.

---

Alan S. Dambrov, Springfield, MA, for Bank.

Peter M. Stern, Springfield, MA (Steven G. Legum, Mineola, NY, of counsel), for CPF.

David M. Nickless, Trustee, Fitchburg, MA.

### MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court for determination are cross motions for summary judgment filed by The Bank of Western Massachusetts ("Plaintiff" or the "Bank") and CPF Premium Funding, Inc. ("Defendant" or "CPF") relative to a complaint to determine the validity, priority, or extent of a lien or other interest in property. Through its complaint, the Bank seeks to establish that it has a perfected first priority security interest in certain refunded insurance premiums. The following constitute findings of fact and conclusions of law, pursuant to Fed.R.Bank.P. 7052.

#### I. *Facts*

The material facts are not in dispute. On February 4, 1994 (the "Petition Date"), National Reserve Corporation (the "Debtor") filed with this Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Chapter 11 case was converted to a Chapter 7 case on April 3, 1996, at which time attorney David Nickless was appointed as the Chapter 7 Trustee in Bankruptcy (the "Trustee").

As of the Petition Date, the Bank held a perfected security interest in all the Debtor's assets under a security agreement dated June 15, 1990. Pursuant to a cash collateral stipulation approved by the Court on December 4, 1994, the Bank was granted a postpetition security interest in all of the Debtor's

assets to the extent of any depletion in the value of its prepetition collateral.

In August of 1994, well after the Petition Date, the Debtor entered into two insurance premium financing agreements (the "Agreements" or "Financing Agreements") with CPF. On the basis of those Agreements, CPF financed a total of $30,761.85 to purchase insurance policies for the Debtor. In return, the Debtor agreed to pay CPF $3,575.94 per month for nine months and granted CPF a security interest in "any and all gross unearned premiums and dividends which may be payable under the insurance policies...." The Debtor also gave CPF a power of attorney to cancel the policies (presumably not only if requested by the Debtor, but also in the event that the Debtor defaulted in its payments to CPF). The transaction was structured so that at any given time, if the insurance policies were cancelled, the premium refunds due on the policies would equal or exceed the amount then owed to CPF.

Neither the Debtor nor CPF sought or obtained court approval of the Financing Agreements. In addition, CPF was unaware at the time of the execution of the Financing Agreements that the Debtor had filed a Chapter 11 petition.

The Debtor made four payments as required by the Agreements but then defaulted. The policies were cancelled effective April 8, 1995, after the conversion of the case to Chapter 7. The cancellation of the insurance policies generated a refund of $14,353.76 (the "Refund") which the insurance company paid to the Trustee. The Trustee then turned over the Refund to CPF.

The Bank subsequently commenced this adversary proceeding seeking to recover the Refund. The Bank's assertion that it is entitled to the Refund is based on its postpetition security interest in the Debtor's postpetition assets. The Bank and CPF each filed motions for summary judgment. After a hearing thereon, the Court took the motions under advisement.

## II. *Positions of the Parties*

The Bank asserts that, by virtue of its perfected security interest in all of the Debtor's assets, it is entitled to the Refund. It also contends that since CPF failed to obtain prior court approval of the Financing Agreements as required by 11 U.S.C. § 364, the Agreements are voidable and, as a result, CPF is *at most* an unsecured creditor and enjoys no lien in the Refund.

CPF argues that under state law, its security interest is superior to the Bank's security interest. CPF also maintains that since it acted in good faith, without knowledge of the bankruptcy case, it is entitled to nunc pro tunc [1] approval of the Financing Agreements. In the alternative, CPF urges the Court to impose a constructive trust on the Refund for the benefit of CPF.

## III. *Discussion*

### A. Summary Judgment

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Fed.R.Bank.P. 7056, the Court may award summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). In the instant case the parties claim that the material facts are not in dispute. Both parties agree that all that remains for determination is a legal issue; that is, which party has a superior security interest in the Refund based on the foregoing facts.

### B. Post Facto Approval of the Financing Agreements

CPF argues that under state law its purchase money security interest in the Re-

---

1. The First Circuit has indicated a preference for the term "post facto." *In re Jarvis,* 53 F.3d 416, 418 n. 2 (1st Cir.1995).

fund is superior to the Bank's earlier security interest in all of the Debtor's assets. In its "Reply Memorandum of Law," CPF explicates the laws of various states regarding perfection of security interests in insurance premium refunds. However, the Memorandum does not set forth the law of the Commonwealth of Massachusetts with respect to this issue, even though there is a chapter of the Massachusetts General Laws devoted to insurance premium finance agencies. *See* Mass.Gen.Laws Ann. ch. 255C.[2]

However, even assuming that CPF's security interest is superior to the Bank's security interest under Massachusetts law, state law is not dispositive. Section 364[3] of the Bankruptcy Code requires court authorization for all secured debt incurred postpetition. It is undisputed that CPF failed to obtain court approval of the Financing Agreements. Notwithstanding this failure, CPF urges the Court to grant such authorization post facto.

The First Circuit has not addressed the standards for post facto approval of a loan under § 364. That court has, however, discussed post facto approval of the employment of professionals persons under § 327(a). In the case of *In re Jarvis*, the court examined the language of § 327(a) and concluded that, while the language of the statute may have

contemplated prior authorization of employment, it did not explicitly prohibit authorization after the fact. 53 F.3d 416, 419 (1995). The court held that the bankruptcy court had the power to authorize the employment of professional persons post facto, but only where the applicant had demonstrated the existence of extraordinary circumstances to justify the application's untimeliness. *Id.* at 421.

Similarly, § 364, while requiring notice and a hearing, does not explicitly prohibit authorization after the fact. Therefore, it is reasonable to conclude that the bankruptcy court, as a court of equity, also has the power to grant post facto approval of postpetition loans under § 364. *See e.g., In re City Wide Press, Inc.,* 110 B.R. 710, 711 (E.D.Pa.1990); *General Elec. Capital Corp. v. Hoerner (Matter of Grand Valley Sport & Marine, Inc.),* 143 B.R. 840, 850 (Bankr.W.D.Mich. 1992); *In re Lite Coal Mining Co.,* 122 B.R. 692, 695–96 (Bankr.N.D.W.Va.1990); *National City Bank, Marion v. Imbody (In re Imbody),* 104 B.R. 830, 834–35 (Bankr. N.D.Ohio 1989); *In re Roxy Roller Rink Joint Venture,* 73 B.R. 521, 524–25 (Bankr. S.D.N.Y.1987). However, given the court's stance in *Jarvis,* it is likely the First Circuit would want this Court to note the existence

---

**2.** If dispositive, Massachusetts law would govern. Not only did the Agreements relate to the financing of a Massachusetts company, but the Financing Agreements themselves provide:

> "15. ENTIRE DOCUMENT AND GOVERNING LAW: ... The laws of Borrower's state of residence noted above will govern this Agreement."

(Agreements. Par. 15). The Debtor's address is listed in the Agreements as "1105 Main Street, West Springfield, Massachusetts." Therefore, selection of the law of the Commonwealth of Massachusetts as the appropriate governing law would be supported not only by the Commonwealth's contacts with the transaction, but also by the agreement of the parties. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473–74, 105 S.Ct. 2174, 2182–83, 85 L.Ed.2d 528 (1985); *International Shoe v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

**3.** 11 U.S.C. § 364 states in pertinent part:

> .   .   .   .   .

> (c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court,

after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—
> (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
> (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
> (3) secured by a junior lien on property of the estate that is subject to a lien.

(d)(1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—
> (A) the trustee is unable to obtain such credit otherwise;
> and
> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

The term "trustee" includes a debtor in possession in a Chapter 11 case. Bankr.R. 9001(10). At the time the Debtor and CPF entered into the financing agreements the case had not yet been converted to a case under Chapter 7.

of at least unusual, if not extraordinary, circumstances before granting post facto approval of such postpetition loans. *See City Wide Press*, 110 B.R. at 711 (post facto approval of postpetition financing is limited to "extraordinary" circumstances); *Grand Valley Sport*, 143 B.R. at 850 (same); *Michaels v. National Bank of Sussex County (In re E–Tron Corp.)*, 141 B.R. 49, 56 (Bankr. D.N.J.1992) (same); *Imbody*, 104 B.R. at 834 (same).

Those courts which have dealt with the issue of post facto approval of postpetition financing generally cite *In re American Cooler Co.*, 125 F.2d 496 (1942) as the leading authority.[4] *E.g.*, *City Wide Press*, 110 B.R. at 711; *In re Braniff Int'l Airlines, Inc.*, 164 B.R. 820, 828 (Bankr.E.D.N.Y.1994), *aff'd*, by 1996 WL 313889 (2d Cir.1996) (unpublished); *Grand Valley Sport*, 143 B.R. at 850; *E–Tron Corp.*, 141 B.R. at 56; *Matter of Alafia Land Dev. Corp.*, 40 B.R. 1, 4 (Bankr. M.D.Fla.1984).

■ In *American Cooler*, a case decided under the Bankruptcy Act, the Second Circuit established three factors which must be satisfied for the court to grant post facto approval of a postpetition loan. 125 F.2d at 497. First, the court must be confident it would have authorized the postpetition financing if a timely application had been made. *Id.* Second, the court must be reasonably persuaded that no creditor has been harmed by the continuation of the business made possible by the loan. *Id.* Third, the lender must have honestly believed it had authority to enter into the loan transaction. *Id.* These requirements are conjunctive and therefore each factor must be satisfied. *E–Tron Corp.*, 141 B.R. at 58.

The *American Cooler* court also noted "[o]f necessity, each case must stand on its own facts and these criteria cannot be mechanically applied ... We should emphasize

that this equitable power must be cautiously exercised, and that only a foolhardy lender will attempt to make it serve as a substitute for proper authorization." 125 F.2d at 497.

Before turning to the facts of the instant case, the Court notes that it has located only two cases which have dealt specifically with post facto approval of insurance premium finance agreements. In both cases post facto approval was not granted. In *AFCO Credit Corp. v. Baxco Corp. (In re Baxco Corp.)*, the court declined to waive the requirement of court approval because the creditor failed to allege that the loan benefitted all parties in interest. 148 B.R. 855, 859 (Bankr.N.D.Ill. 1992).[5] Similarly, in *Braniff*, post facto approval was denied because the court found that creditors were harmed by continuation of the debtor's business. 164 B.R. at 830. Thus, CPF bears a substantial burden in proving that it is entitled to post facto approval of its postpetition loans.

With respect to the first element of the *American Cooler* test, CPF has not provided the Court with facts sufficient to demonstrate that the Court would have authorized the transactions had a timely application for court approval been made. Although it is true that the Debtor operated a restaurant and required insurance coverage for its continued operation, the granting of a superpriority lien would have necessitated Court findings that the Debtor was unable to obtain an unsecured loan and that, notwithstanding the "priming" of the Bank's postpetition lien, the Bank was still adequately protected. *See* §§ 364(c) & 364(d)(1). CPF has not shown, either by affidavit, reference to stipulated facts or documents on file, that unsecured credit was not available to the Debtor or that the Bank was adequately protected notwithstanding the granting of what would have been a lien senior to the lien of the Bank.

---

4. Several courts have held that the test for post facto approval of postpetition financing should be even stricter than that set forth in *American Cooler*. For example in *Grand Valley Sport*, the court explained that not only must the *American Cooler* factors be met, but in addition the equities must strongly favor the creditor and there must be an absence of prejudice to any interested parties. 143 B.R. at 852; *see City Wide Press*,

110 B.R. at 711. Similarly the court in *City Wide Press* suggested that the facts must be more "compelling" than simply meeting the standards set forth in *American Cooler*. 110 B.R. at 711.

5. That court did, however, ultimately grant relief to the lender under a theory of constructive trust. *Id.* at 861.

With respect to the second element of the *American Cooler* test, CPF has offered no evidence to suggest that creditors were not harmed by the continuation of the business made possible by the loans. CPF alleges that, rather than being harmed by the Financing Agreements, creditors were actually benefited by having the assets insured and allowing the Debtor to continue operations. CPF also argues that the unearned premiums would not have been available for distribution to any creditors absent CPF's financing of the insurance policies. However, CPF offered no evidence that the Debtor suffered no loss following issuance of the policies, or that creditors were in any other way benefited by the loans. *See E–Tron Corp.*, 141 B.R. at 57.

Finally, and most importantly, although CPF may have honestly believed that the Debtor had the authority to enter into the "Financing Agreements," this Court believes that, in view of the policies enunciated in *Jarvis* and in all of the foregoing cited decisions, court approval, post facto, requires more than that an applicant's state of mind be honest. It must also be reasonably justified. CPF cannot establish this element on the facts presented. Although CPF claims that the Debtor explicitly misrepresented its authority to enter into the Financing Agreements, the Financing Agreements do not contain *any* express representation by the Debtor, either that it had authority to enter into the Agreements or that it was not currently the subject of a bankruptcy case. CPF does point to the default clauses of the Financing Agreements which provide:

5. DEFAULT, CANCELLATION AND REINSTATEMENT: Borrower agrees that the Company may cancel any Policy and the unpaid balance owed will be immediately due and payable to the Company if any one of more of the following occur:

. . . . .

(c) A voluntary or involuntary proceeding in bankruptcy, receivership or insolvency is instituted by or against the Borrower;

. . . . .

CPF asserts that it relied on this statement as evidence that the Debtor had authority to execute the Agreements and was not *currently* involved in a bankruptcy proceeding. The Court does not find this clause, granting CPF an option to cancel the Financing Agreements, to be an explicit representation by the Debtor as to its authority to enter into the transaction or its financial status. If in fact CPF relied on that "boilerplate" provision, the Court finds such reliance unjustified. *See E–Tron Corp.*, 141 B.R. at 57 (creditor would not have been justified in relying on representations of debtor's attorney with respect to court approval in light of code sections 363 and 364).

This Court is not without some sympathy for CPF's position. The Court agrees that the Debtor should have informed CPF of the bankruptcy proceeding. However, CPF did not bother to ask. CPF must bear *some* responsibility for determining the authority of its borrowers to enter into financing agreements.

Instead, CPF devoted a significant amount of its oral argument, memorandum, and affidavits to the argument that insurance premium finance agencies should not be required to investigate a borrower's financial condition because that is not the practice of the premium finance industry. CPF explains that the loans are structured so that if there is a default at any point in time, there will be sufficient collateral, via the refunded premiums, to ensure that the premium finance company will be made whole. As a result, CPF concludes it is unnecessary to check the financial status of borrowers. The Court notes that any secured creditor might make the same argument. If the Court were to adopt CPF's reasoning then a debtor and a secured party could effectively create a valid postpetition transaction, based merely on their own agreement. *Bezanson v. Indian Head National Bank (In re J.L. Graphics, Inc.)*, 62 B.R. 750, 756 (Bankr.D.N.H.1986). This would in effect re-write § 364, contrary to the congressional determination to require prior approval. *See Grand Valley Sport*, 143 B.R. at 852–53; *J.L. Graphics*, 62 B.R. at 755.

■ This Court concludes that, in order for a financier to seek post facto approval of an insurance premium financing agreement, it must show that it has taken reasonable steps to determine the debtor's authority to enter into the transaction. A more lax approach might encourage parties to circumvent the statutory requirement. The Court finds that CPF took no affirmative steps to determine the Debtor's authority to execute the Financing Agreements. That failure is sufficient, in and of itself, to justify denial of post facto approval of the Agreements.

## C. Constructive Trust

■ Although not clearly articulated, CPF also attempts to argue that the Court should impose a constructive trust on the Refund for the benefit of CPF due to the Debtor's alleged misrepresentation of its status, and to prevent the unjust enrichment of the Bank. However, once again, CPF has failed to discuss applicable Massachusetts law.

■ A constructive trust is a remedial device employed in equity to prevent unjust enrichment where a party acquires property by fraud, mistake, breach of fiduciary duty, or under other circumstances indicating that the party would be unjustly enriched if permitted to retain the property. *See First Union Nat'l Bank of Fla. v. Abbey Fin. Corp. (In re Abbey Fin. Corp.)*, 193 B.R. 89, 94 (Bankr.D.Mass.1996); *Rotman Elec. Co., Inc. v. Cullen (In re Vappi & Co., Inc.)*, 145 B.R. 719, 725 (Bankr.D.Mass.1992). Under Massachusetts law, a constructive trust is not to be imposed absent fraud, breach of fiduciary duty, or other misconduct. *Collins v. Guggenheim*, 417 Mass. 615, 618, 631 N.E.2d 1016 (1994).

CPF relies on the *Baxco* decision in which a bankruptcy court, sitting in the Northern District of Illinois, created a constructive trust for the benefit of a premium finance agency where all of the elements of fraud were established, and the agency justifiably relied on the debtor's misrepresentation of its authority. 148 B.R. at 860–61. However, the *Baxco* case is easily distinguished. In *Baxco*, the financing agreement included an express representation by the Debtor that it was not insolvent or the subject of any insol-

vency proceeding. *Id.* at 858. Furthermore, another section of the financing agreement in *Baxco* provided "The undersigned [agent] represents that a proceeding in bankruptcy, receivership, or insolvency has not been instituted by or against the named insured or if the name insured is the subject of such a proceeding, it is noted on the premium finance agreement."

In the instant case, CPF has failed to prove that the Debtor made any misrepresentation to CPF as to the Debtor's authority to execute the Financing Agreements. No such representation was sought by CPF and none was given. The default provisions of the Financing Agreements were not a representation by the Debtor, and reliance thereon by CPF would have been unjustified. Furthermore, the Bank is guilty of no misconduct; it is an innocent party. Finally, CPF has failed to prove that the Bank would be unjustly enriched by receipt of the Refund. On the contrary, the source of the insurance premium dollars later converted to the Refund may be the Bank's cash collateral depending on the extent of its postpetition lien.

This Court finds no basis for imposing a constructive trust. As stated in *Braniff* "[t]o permit the [party seeking a constructive trust] to profit from its own negligence at the expense of those who have dealt with the debtor in a more diligent fashion would be to ignore the purpose of the Bankruptcy Code. 164 B.R. at 827 (quoting *In re Vichele Tops, Inc.*, 62 B.R. 788, 792 (Bankr.E.D.N.Y.1986)).

## IV. *Conclusion*

CPF's Motion for Summary Judgment is denied. CPF does not have a security interest in the Refund since it failed to obtain prior court approval of the Financing Agreements, and post facto approval is not appropriate. The Bank's Motion for Summary Judgment is allowed to the extent that it seeks a judgment that CPF's security interest is void. To the extent that the Bank's motion seeks a determination that the Bank is entitled to the Refund by virtue of its security interest in postpetition assets, the Court will allow the Trustee until September 20, 1996 to file a Motion to Intervene in the

event that the Trustee wishes to challenge the Bank's postpetition lien on any basis. Absent intervention, the Bank's Motion for Summary Judgment will be allowed in full and CPF will be ordered to turnover $14,-353.76, plus interest, to the Bank. A separate Order shall issue in conformity with this Memorandum.